NO. 07-11-0495-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

OCTOBER 16, 2012

_____


TOMMY FISHER, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF
THE BOARD OF DIRECTORS OF LUBBOCK COUNTY WATER CONTROL
AND IMPROVEMENT DISTRICT, AND LUBBOCK COUNTY
WATER CONTROL AND IMPROVEMENT DISTRICT, APPELLANTS

V.

CHURCH & AKIN, L.L.C., A TEXAS LIMITED LIABILITY COMPANY, APPELLEE

_____

FROM THE 237TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2011-558,690; HONORABLE LES HATCH, JUDGE

_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**


This is an interlocutory appeal from the denial of a plea to the jurisdiction filed by

a governmental unit.[1]  Appellants, Tommy Fisher, in his official capacity as President of

the Board of Directors of Lubbock County Water Control and Improvement District, and

---

[1]*See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8) (West Supp. 2012) (allowing interlocutory appeal of denial of a plea to the jurisdiction filed by a governmental unit).

Lubbock County Water Control and Improvement District, appeal from the trial court's order denying their plea to the jurisdiction filed in response to the suit filed by Appellee, Church & Akin, L.L.C., a Texas Limited Liability Company.[2] By a sole issue, Appellants contend the trial court erred in denying their plea because the limited waiver of immunity set forth in section 271.152 of the Texas Local Government Code does not apply. We affirm and remand in part and reverse and render in part.

## FACTUAL BACKGROUND

Appellants and Appellee entered into a commercial lease agreement governing the use and operation of the marina at Buffalo Springs Lake. The lease was for a three year term (2007 – 2010) with an option to extend which provides, "[s]o long as Lessee [Appellee] is in compliance with the terms of this lease, the term may be extended for an additional term, up to 5 extended terms, for five (5) years each term." Following expiration of the initial three year term, Appellee paid, and Appellants accepted, the annual rent payment of $3,000 cash, plus five percent of gross sales, excluding gas, as provided by the lease. In January 2011, a board meeting was held at which time dissatisfaction was expressed concerning Appellee's days and hours of operation. Months later, on July 26, 2011, Appellants gave written notice to terminate the lease and notified Appellee to vacate the premises by August 20, 2011. Although the record does not reference a specific date, Appellee was ultimately locked out of the premises.

---

[2]Lubbock County Water Control and Improvement District is a governmental agency. *See* TEX. CONST. art. XVI, § 59(b) (WEST SUPP. 2012). *See also* TEX. WATER CODE ANN. § 51.011 (WEST 2008). A water control and improvement district is a local governmental entity. *See* TEX. LOCAL GOV'T CODE ANN. § 271.151(3)(C) (WEST 2005).

On August 24, 2011, Appellee filed suit against Appellants. Appellants responded by filing a plea to the jurisdiction alleging that Appellee's claims were barred by governmental immunity and challenging the trial court's jurisdiction to entertain the suit. By an amended petition, Appellee alleged breach of contract for services, wrongful eviction, tortious interference with business relationships, and a takings claim pursuant to Article I, Section 17 of the Texas Constitution. Appellants supplemented their plea to the jurisdiction to address the new takings claim. Without holding a hearing, the trial court denied the plea in its entirety.

## STANDARD OF REVIEW—PLEA TO THE JURISDICTION

A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit. *Bland Independent School Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issue raised. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004).

If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue must be resolved by the fact finder. *Id.* at 227-28. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. We then review the trial court's ruling under a *de novo* standard. *Id.*

3

The party suing the governmental entity bears the burden of affirmatively demonstrating the trial court has jurisdiction to hear the cause. *Tex. Dept. of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001). A court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. *Blue*, 34 S.W.3d at 555.

I.  **ANALYSIS**

   A. **BREACH OF CONTRACT CLAIM**

There is but one route to the courthouse for breach-of-contract claims against a governmental entity, and that route is through the Legislature. *General Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 597 (Tex. 2001). In 2005, the Legislature enacted section 271.152 of the Texas Local Government Code "to loosen the immunity bar so that all local governmental entities that have been given the statutory authority to enter into contracts shall not be immune from suits arising from those contracts." *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Property/Casualty Joint Self-Ins. Fund*, 212 S.W.3d 320, 327 (Tex. 2006). The statute waives immunity from suit for certain contract claims. *Kirby Lake Dev.*, *Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 838 (Tex. 2010). Specifically, it provides, "[a] local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a *contract subject to this subchapter* waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter." TEX. LOCAL GOV'T CODE ANN. §

4

271.152 (WEST 2005) (Emphasis added).[3]  A "contract subject to this subchapter" is defined as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity."  *See id.* at § 271.151(2).  *See also City of Dallas v. Albert*, 354 S.W.3d 368, 377 (Tex. 2011).  The language is a clear and unambiguous waiver of governmental immunity for certain breach of contract suits. *Albert*, 354 S.W.3d at 377.

For the statute's waiver of immunity to apply, three requirements must be established: (1) the party against whom the waiver is asserted must be a local governmental entity; (2) the entity must be authorized by statute or the Constitution to enter into contracts; and (3) the entity must in fact have entered into a contract that is "subject to this subchapter."  *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011).

The first two requirements for waiver of immunity are not in dispute in this case— Lubbock County Water Control and Improvement District is a local governmental entity authorized to enter into contracts.  It is the third requirement, whether a contract "subject to this subchapter" exists, that is at the heart of Appellants' contention that waiver does not apply and the trial court erred in denying their plea to the jurisdiction. To establish that requirement, five elements must be met.  The contract must be (1) in writing, (2) state the essential terms, (3) provide for goods or services, (4) to the local governmental entity, and (5) be executed on behalf of the local governmental entity. *See* TEX. LOCAL GOV'T CODE ANN. § 271.151(2) (West 2005).  *See also Williams*, 353

---

[3]Subchapter I of Chapter 271 is entitled "ADJUDICATION OF CLAIMS ARISING UNDER WRITTEN CONTRACTS WITH LOCAL GOVERNMENTAL ENTITIES."

S.W.3d at 135. Here, Appellants argue that no written contract existed following expiration of the primary lease term. Additionally, they assert that even if a written contract did exist, it was not a contract for "goods or services" that triggered application of section 271.152's waiver of immunity.

We first examine whether a written contract exists. According to the written lease, the original term was for a thirty-six month period beginning on December 30, 2007. Immediately following the stated term is a provision providing that "[a]ny holding over shall be on a term of month to month." The option to extend provides, "[s]o long as [Appellee] is in compliance with the terms of this lease, the term may be extended for an additional term up to 5 extended terms, for five (5) years each term."

In *Willeke v. Bailey*, 144 Tex. 157, 189 S.W.2d 477 (1945), similar to the lease before us, the option to extend in a contract did not require any notice for an extension. The Court held that payment of rent in accordance with the terms of the contract after the expiration of the primary term constituted an election to exercise the option to extend. *Id.* at 481. Additionally, when an option to extend is exercised, the extended term takes on the terms of the original conveyance. *See Jones v. Gibbs*, 133 Tex. 627, 130 S.W.2d 265, 268 (1939).

Here, all that was required to exercise the option to extend was for Appellee to be in compliance with the terms of the lease. Appellants do not contend that Appellee was not in compliance. Nor does the record suggest otherwise. After expiration of the primary term, Appellee made, and Appellants accepted, the required annual rent payment. Deposition testimony further confirmed the five percent of gross sales was

6

also accepted by Appellants. Therefore, we conclude a written contract exists and it contains the essential terms of the original lease. Thus, the "in writing" and "essential terms" requirements are satisfied.

Next, Appellants argue the lease was one for real property and not a contract for provision of goods or services to a local governmental entity. Chapter 271 of the Texas Local Government Code does not define "goods or services."[4] "Services" is a broad enough term to encompass a wide array of activities. *Kirby Lake Dev., Ltd.*, 320 S.W.3d at 839. It includes generally any act performed for the benefit of another under some arrangement or agreement whereby such act was to have been performed. *Id.* (quoting *Creameries of Am. v. Indus. Comm'n*, 98 Utah 571, 102 P.2d 300, 304 (Utah 1940)). *But see Berkman v. City of Keene*, 311 S.W.3d 523, 527 (Tex.App.—Waco 2009, pet. denied) (holding the statute does not apply to contracts in which the benefit that the local government entity would receive is an indirect, attenuated one).

Furthermore, the services provided need not be the primary purpose of the contract. *Kirby Lake Dev., Ltd.*, 320 S.W.3d at 839. In *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist.*, the Supreme Court liberally construed a government-pooled insurance policy (the Fund) as encompassing "services" rendered by its members based on the fact that the Fund's members elected a governing board and a board subcommittee resolved claims disputes. 212 S.W.3d at 327. This function, the Court determined was a provision of services from the Fund's members to the Fund. *Id.*

---

[4]"Services" is defined in other statutes as follows: (1) work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods, TEX. BUS. & COM. CODE ANN. § 17.45(2) (WEST 2011); and (2) any act performed, anything supplied, and any facilities used or supplied by a public utility in the performance of the utility's duties . . . . TEX. UTIL. CODE ANN. § 11.003(19) (WEST 2007).

Here, under the terms of the lease, Appellee was obligated to pay $3,000 cash per year, in advance, plus five percent of the gross sales, excluding gas. Additionally, the "USE" paragraph of the lease provides as follows:

> The premises are leased to be used only as a Lake marina, restaurant, gasoline and sundry sales and as a recreational facility. Lessee agrees to restrict their use to such purposes, and not to use, or to permit the use of, the premises for any other purpose without first obtaining the consent in writing of Lessor or Lessor's authorized agent. Lessor agrees not to unreasonably withhold consent.

Under the terms of this agreement, Appellants received more than just a rent payment. The agreement entitled Appellants to a percentage of gross sales, and the "USE" paragraph elevated the lease to more than simply a lease of real property, as Appellants contend, it provided Appellants the benefit of an operating marina.[5] In fact, in the past, instead of leasing out the marina, the Water District hired its own managers to run it. Here, the record demonstrates that Appellants became disenchanted with the arrangement, not because of Appellee's failure to pay rent or otherwise comply with standard lease provisions, but because they believed the District was not receiving the full benefits to be derived from operation of the marina. Although the operation of a marina was not the stated primary purpose of the contract, a liberal interpretation of the entire lease taken together with the Legislative intent in enacting section 271.152 to loosen the immunity bar leads us to conclude Appellee provided "services" to a local

---

[5]The deposition testimony of Water District Board Member Paul Hodges stated,

> I guess it's safe to say that they [the customers and visitors to Buffalo Springs Lake] want the marina to be out there so they can purchase goods while they're out on Buffalo Springs Lake. . . . [T]he marina is to be a service to our customers. . . . We [the Water District] have an obligation to the citizens of Lubbock County to run that lake for their benefit. If we don't have a marina and/or snack bar, we're not doing as good a job as we should.

8

governmental entity which satisfies the third and fourth elements of section 271.151(2).[6] *See Kirby Lake Dev., Ltd.*, 320 S.W.3d at 839.

Finally, the lease was properly executed on behalf of the local governmental entity by Appellant, Tommy Fisher, on behalf of the Lubbock County Water Control and Improvement District. With that element satisfied, we conclude the five elements listed in section 271.151(2) are present and the lease is a "contract subject to this subchapter." Thus, by its plain language, section 271.152 applies and Appellants have waived immunity to suit for the purpose of adjudicating Appellee's breach of contract claim.[7] Accordingly, we hold the trial court did not err in denying Appellants' plea to the jurisdiction as to the breach of contract claim.

## B. CONSTITUTIONAL TAKINGS CLAIM

Article I, Section 17 of the Texas Constitution provides that "[n]o person's property shall be taken, damaged or destroyed or applied to public use without adequate compensation being made, unless by the consent of such person . . . ." TEX. CONST. art. I, § 17. The power to take property for public use extends to every species of property, including personal property. *Houston N. Shore Ry. Co. v.* Tyrrell, 128 Tex.

---

[6]Because we reach the conclusion that the contract provided services to Appellants, we do not reach the question of whether personal property provided by Appellee, and seized by Appellants, constitutes "goods" provided pursuant to the contract.

[7]We have not overlooked Appellants' reliance on *Water Exploration Co.*, *Ltd. v. Bexar Metro. Water Dist.*, 345 S.W.3d 492, 501 (Tex.App.—San Antonio 2011, no pet.), where the court noted that "'services' under section 271.151(2) cannot mean any service – no matter how curative or remote because such an interpretation has the danger of encompassing all contracts." Our conclusion that "services" were provided to Lubbock County Water Control and Improvement District is based on the fact that the lease was more than just a lease for rental of real property. It is not based on a remote, indirect or attenuated benefit to the local governmental entity.

248, 98 S.W.2d 786, 793 (1936); *Renault, Inc. v. City of Houston*, 415 S.W.2d 948, 952 (Tex.Civ.App.—Waco 1967), *rev'd on other grounds*, 431 S.W.2d 322 (Tex. 1968).

By its amended pleading, Appellee alleged it was the rightful owner of certain personal property. By uncontroverted affidavit in support of Appellee's response to Appellants' plea to the jurisdiction, the previous general manager of the marina averred that he moved certain appliances and items onto the property for purposes of operating the marina.[8] The lease provides for removal of personal property at the end of the lease term and we are tasked with determining whether possession of Appellee's listed personal property by Appellants constitutes a viable takings claim under the Texas Constitution.

To establish a takings claim, Appellee was required to plead facts showing that a governmental actor acted intentionally to take or damage property for a public use. *See Little-Tex Insulation Co.*, 39 S.W.3d at 598. When the State withholds property or money from an entity in a contract dispute, the State does not have the requisite intent under constitutional takings jurisprudence. *Id.* at 598-99. Rather, the State is acting within a color of right under the contract and not under its eminent domain powers. *Id.* at 599. In acting within a color of right to take or withhold property in a contractual situation, the State is acting akin to a private citizen and not under any sovereign powers. *Id.* Thus, it does not have the intent to take under its eminent domain powers. Its intent is to act within the scope of the contract. *Id.*

---

[8]Affiant lists the following items as being brought onto the premises by Appellee: 1 Metalfrio ice cream chest freezer; 1 True large double door reach-in freezer; 1 True refrigerator TSSU-27-12M-C prep table; 2 sets of heat lamps; 1 Vulcan stove/oven; 1 white Westinghouse energy saver freezer; 12 metal indoor tables; 51 indoor chairs; 1 3-compartment dish sink; 1 VPR Bunn coffee maker; 2 Comfort Maker model RGB 091; 1 Comfort Maker model RGS 121; and 1 outside gazebo.

Here, Appellants are withholding Appellee's personal property pursuant to their colorable contract rights under the lease. They have no intent to take the property under eminent domain powers. Thus, Appellee's constitutional takings claim fails and the trial court erred in denying Appellants' plea to the jurisdiction on that claim.

## C. TEXAS TORT CLAIMS ACT

By its live pleading, Appellee alleged that Appellants committed tortious interference with business relationships by interfering with its contractual relations with suppliers and customers. It further alleged wrongful eviction for being locked out of the premises. Appellee's claims allege intentional torts. *See City of Houston v. Guthrie*, 332 S.W.3d 578, 593 (Tex.App.—Houston [1st Dist.] 2009, pet. denied). *See also Columbia/HCA of Houston v. Tea Cake French Bakery & Tea Room*, 8 S.W.3d 18, 22 (Tex.App.—Houston [14th Dist.] 1999, pet. denied). The Texas Tort Claims Act does not apply to intentional torts. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.057(2) (WEST 2011). Consequently, the trial court erred in denying Appellants' plea to the jurisdiction on Appellee's claims of tortious interference with business relationships and wrongful eviction. *Guthrie*, 332 S.W.3d at 593.

## CONCLUSION

We reverse that portion of the trial court's order denying the plea to the jurisdiction of Tommy Fisher, in his official capacity as President of the Board of Directors of Lubbock County Water Control and Improvement District, and Lubbock County Water Control and Improvement District on the claims of tortious interference with business relationships, wrongful eviction and constitutional takings. Because those

11

claims are incurably defective, we render an order of dismissal with prejudice based on governmental immunity and do not remand those claims. *See Harris County v. Sykes*, 136 S.W.3d 635, 637 (Tex. 2004). We affirm that portion of the trial court's order denying the plea to the jurisdiction on Church & Akin's claims for breach of contract and, because this is an interlocutory appeal, we remand this cause to the trial court for further proceedings consistent with this opinion.


Patrick A. Pirtle
Justice

Campbell, J., concurring.